IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ISAIAH GILLINS, ) | |
| ) | |
| Plaintiff, ) | No. 2:16-cv-00795-DCN |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CELADON TRUCKING ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant Celadon Trucking Services, Inc.'s ("Celadon") motion to dismiss. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

Plaintiff Isaiah Gillins ("Gillins") is a resident of Charleston County, South Carolina, and Celadon is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Compl. ¶¶ 1–2; Notice of Removal ¶ 3(a)(ii). Gillins purportedly entered into an equipment lease agreement ("the Agreement") with Celadon on August 23, 2012, for the rent-to-own lease of an 18-wheel truck. Compl. ¶ 4. Gillins agreed to pay Celadon for use of the truck at a rate of 25 cents per mile until the Agreement expired. Id. ¶ 5. Celadon, however, terminated Gillins on January 16, 2014, for having too many safety violations on his driving record. Id. ¶ 6. Gillins filed a complaint against Celadon on December 1, 2015, in the Court of Common Pleas for Charleston County, asserting the following causes of action: (1) breach of contract; (2) fraud in the inducement; (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"),

1

S.C. Code Ann. § 39-5-10, et seq.; (4) unjust enrichment and quantum meruit; and (5) conversion. Id. ¶¶ 1–26. According to Gillins, at the time of termination, he had paid over $100,000 toward the lease and use of the truck. Id. ¶ 7. In addition to incurring maintenance costs and expenses, Gillins claims he paid roughly $80,000 at the commencement of the Agreement. Id. Gillins further alleges Celadon deducted approximately $35,000 from his checks. Id.

Celadon filed a notice of removal of the action from state court to this court on March 11, 2016, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1. On March 18, 2016, Celadon filed the present motion to dismiss all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Gillins failed to state any claim upon which relief may be granted. ECF No. 4. Gillins filed a response in opposition to the motion on April 14, 2016, ECF No. 10, and Celadon replied on April 25, 2016. ECF No. 11. Per the court's instructions, the parties submitted supplemental memoranda addressing what effect, if any, the Agreement's "Applicable Law" provision has on the present motion. ECF Nos. 14, 15. Celadon filed its supplemental brief on July 18, 2016, ECF No. 14, and Gillins filed his response on July 28, 2016. ECF No. 15. On August 12, 2016, the court held a hearing on the motion to dismiss. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See E.I. du Pont de Nemours

& Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. A complaint must contain sufficient factual allegations in addition to legal conclusions. Although Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### III.   DISCUSSION

Celadon brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Gillins failed to state any claim upon which relief may be granted in his complaint. ECF No. 4. Gillins argues the court should deny Celadon's motion to dismiss or, in the alternative, grant him leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15. ECF No. 10.

### A.     Breach of Contract

Celadon argues Gillins failed to state a claim upon which relief may be granted for breach of contract because his complaint—coupled with the attached copy of the Agreement—demonstrates Gillins entered into a contract with Quality Equipment

3

Leasing, LLC ("Quality Leasing"), not Celadon. According to Celadon, Gillins also failed to sufficiently plead the alleged breaches in his complaint.

Under South Carolina law, "[t]he elements for breach of contract are the existence of a contract, its breach, and the damages caused by such breach." Branche Builders, Inc. v. Coggins, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009). "An action for damages for breach of a contract is predicated on the existence of a contract" and, thus, "[i]t necessarily follows that the complaint must contain allegations of a contract and a breach thereof before any damages are recoverable." Tidewater Supply Co. v. Indus. Elec. Co., 171 S.E.2d 607, 608 (S.C. 1969). "Only parties to a contract may be sued for a breach of contract cause of action." Murphy v. Jefferson Pilot Commc'ns Co., 657 F. Supp. 2d 683, 693 (D.S.C. 2008).

Celadon focuses heavily upon the fact that the Agreement states it is between Gillins and Quality Leasing, maintaining that this entitles Celadon to dismissal of the action. In other words, Celadon argues it cannot be held liable for breach of a contract to which, in Celadon's view, it was not a party. What Celadon overlooks, however, is that the Agreement is titled "Equipment Lease Agreement (Celadon Lease Purchase Drivers)," and the address given for the "Lessor" is "One Celadon Drive, 9503 E. 33rd Street, Indianapolis, IN 46236." ECF No. 1-1 at 9, 16. Given that the name Celadon appears twice on the face of the Agreement, the court finds a perfectly reasonable inference to be drawn is that Quality Leasing is, in some way, related to Celadon. See E.I. du Pont de Nemours, 637 F.3d at 440 (noting the court must draw all reasonable inferences in favor of the plaintiff). Indeed, counsel candidly conceded he was unable to argue that Celadon had absolutely nothing to do with Quality Leasing. Although the

4

court cannot look outside the pleadings and exhibits, or consider counsel's arguments as evidence, the court finds it relevant that Celadon's name appears at the very top of the Agreement and the address provided therein is that of Celadon's corporate headquarters.

Turning to the merits of his breach of contract claim, Gillins alleges that he entered into the Agreement with Celadon for the rent-to-own-lease of the 18-wheeler truck on August 23, 2012. Compl. ¶ 4. Gillins further asserts that Celadon breached the Agreement between the parties by (1) "failing to refund [Gillins] for monies paid into the truck which were in excess of [$100,000]"; (2) "failing to discuss safety violations with [Gillins] prior to yearly evaluations"; (3) "retroactively applying a safety violation on [Gillins'] record that should have been time barred under the Agreement"; and (4) "failing to provide [Gillins] with termination paperwork." Id. ¶ 9. Additionally, Gillins claimed he was entitled to damages resulting from these alleged breaches. Id. ¶¶ 7, 10.

Based on the foregoing, when accepting the facts in the complaint as true and drawing all reasonable inferences in favor of Gillins, the court finds he has stated a plausible claim for breach of contract in this case. See E.I. du Pont de Nemours, 637 F.3d at 440 (stating the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff); Iqbal, 556 U.S. at 679 (providing that, on a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief"); Coggins, 686 S.E.2d at 202 (noting "[t]he elements for breach of contract are the existence of a contract, its breach, and the damages caused by such breach").

### B.     Fraud in the Inducement

Celadon argues Gillins failed to state a claim upon which relief may be granted for fraud in the inducement because he did not allege each substantive element of the claim in his complaint. Further, Celadon contends Gillins failed to allege the elements he did include in his complaint with sufficient particularity.

"Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to her or to surrender a legal right." Moseley v. All Things Possible, Inc., 694 S.E.2d 43, 45 (S.C. Ct. App. 2010) (quoting Regions Bank v.Schmauch, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003)). To prevail on a cause of action for fraud, a plaintiff must prove each of the following elements "by clear, cogent, and convincing evidence":

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

Schmauch, 582 S.E.2d at 444–45. Importantly, "[t]he failure to prove any element of fraud . . . is fatal to the claim." Schnellmann v. Roettger, 645 S.E.2d 239, 241 (S.C. 2007) (per curiam). To establish a claim for fraud in the inducement, a plaintiff—in addition to proving all nine elements of fraud—must demonstrate "(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." Moseley, 694 S.E.2d at 45 (quoting Darby v. Waterboggan of Myrtle Beach, Inc., 344 S.E.2d 153, 155 (S.C. Ct. App. 1986)).

Fraud claims, of course, are subjected to heightened pleading requirements, particularly when affirmative misrepresentations are alleged. Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." In interpreting Rule 9(b), courts have found "that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." Mincey v. World Savings Bank, FSB, 614 F. Supp. 2d 610, 626 (D.S.C. 2008) (quoting Adams v. NVR Homes, Inc., 193 F.R.D. 243, 249–50 (D. Md. 2000)). "A complaint failing to specifically allege the time, place, and nature of the fraud is subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." Id. Nevertheless, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied: '(1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" Id. (quoting Adams, 193 F.R.D. at 250).

As Celadon notes, a review of the complaint in this case reveals Gillins failed to allege two key elements of his fraud in the inducement claim. Specifically, Gillins did not allege the materiality of Celadon's purported misrepresentations or whether Gillins had a right to rely upon such representations. See Moseley, 694 S.E.2d at 45 (stating to establish a claim for fraud in the inducement, a plaintiff must prove all nine elements of fraud, one of which is the "materiality" of the representation, and also show, among other things, "that he had a right to rely on the representation made to him"). In addition to these defects in the complaint, the court is also unable to identify any representation upon which Gillins relied. Gillins generally alleges that Celadon made misrepresentations and

7

misled him as to the facts upon which he based his decision to sign the Agreement, but he never identifies the time, place, speaker, or contents of the purported fraudulent statements.  See Mincey, 614 F. Supp. 2d at 626 (providing "a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements" (quoting Adams, 193 F.R.D. at 249–50)).  Further, nothing in the record indicates Gillins has substantial prediscovery evidence of these facts.  As a result, Celadon has not been made aware of the particulars of any alleged misrepresentations against which it must prepare a defense for trial.

Therefore, applying the above standards to the facts of the instant case, the court finds dismissal of Gillins' fraud in the inducement claim proper because he failed to plead all elements of his cause of action or allege the particulars of his claim to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).  See Mincey, 614 F. Supp. 2d at 626 (stating "[a] complaint failing to specifically allege the time, place, and nature of the fraud is subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure").

### C.     Unfair Trade Practices

Celadon argues Gillins failed to state a claim upon which relief may be granted for unfair trade practices because "a deliberate or intentional breach of contract, without more, does not constitute a violation of the SCUTPA."  Def.'s Mot. 8.  According to Celadon, "only unfair acts that adversely affect the public interest give rise to liability under the SCUTPA," and Gillins failed to "allege[] this essential element in his complaint."  Id.  Gillins, however, contends he "pleaded facts showing that the deceptive

acts of [Celadon] have an impact upon the public interest and have a potential for repetition" and, thus, met the pleading standard of Rule 8(a).  Pl.'s Resp. 8.

The General Assembly of South Carolina, by enacting the SCUTPA, "declare[d] unfair or deceptive acts or practices in trade or commerce unlawful."  Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004) (citing S.C. Code Ann. § 39-5-20(a) (2002)).  Under the SCUTPA, "[a]ny person who suffers ascertainable loss of money or property, real or personal, as a result of the use or employment by another of an unfair or deceptive method, act[,] or practice declared unlawful by [section] 39-5-20 may bring an action individually . . . to recover actual damages."  S.C. Code Ann. § 39-5-140(a).

To recover in a SCUTPA action, a plaintiff must prove that "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)."  Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry, 743 S.E.2d 808, 816 (S.C. 2013) (quoting Wright v. Craft, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)).  The SCUTPA, however, "is not available to redress a private wrong because an unfair or deceptive act that affects only the parties to the transaction is beyond the scope of the SCUTPA."  Woodson v. DLI Props., LLC, 753 S.E.2d 428, 435 (S.C. 2014).  In other words, "[p]laintiffs must allege and prove that the defendant's actions adversely affected the public interest."  Singleton, 595 S.E.2d at 466.

> An impact on the public interest may be shown if the acts or practices have the potential for repetition.  The potential for repetition may be shown in either of two ways:  (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent

9

>   deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.

Id. (internal citations omitted).

The court agrees with Celadon that Gillins has failed to state a plausible claim upon which relief may be granted for violation of the SCUTPA. Even assuming Celadon engaged in an unfair or deceptive act, Gillins has not shown—and cannot show—that it affected the public interest. See id. (stating "[p]laintiffs must allege and prove that the defendant's actions adversely affected the public interest" (emphasis added)). Gillins, for example, did not allege that "the same kind of actions occurred in the past" or "the company's procedures created a potential for repetition of the unfair and deceptive acts." Id. (providing that "[a]n impact on the public interest may be shown if the acts or practices have the potential for repetition," which can be demonstrated "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts").[1]

Accordingly, because Gillins failed to allege the impact of Celadon's actions on the public interest, the court finds dismissal of Gillins' SCUTPA claim appropriate in this matter. A review of Gillins' complaint demonstrates the wrong of which he complains appears to be limited to the facts of this case. See Woodson, 753 S.E.2d at 435 (providing that the SCUTPA "is not available to redress a private wrong because an

---

[1] Also, to the extent Gillins argues that he alleged "both the Plaintiff and the public have suffered a loss as a result of the unfair and deceptive trade practices of the Defendant" in his complaint, Pl.'s Resp. 7, the court notes that this assertion does not appear in his three-paragraph claim under the SCUTPA or anywhere else in the complaint for that matter.

unfair or deceptive act that affects only the parties to the transaction is beyond the scope of the SCUTPA").

### D.     Unjust Enrichment & Quantum Meruit

Celadon argues Gillins failed to state a claim upon which relief may be granted for quantum meruit and unjust enrichment because recovery under these theories is unavailable "if a party bases its action on the existence of a contract." Def.'s Mot. 9.

"To prevail on a quantum meruit claim, a plaintiff must establish (1) he conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) retention of the benefit by the defendant under the circumstances make it inequitable for the defendant to retain it without paying its value." Williams Carpet Contractors, Inc. v. Skelly, 734 S.E.2d 177, 180 (S.C. Ct. App. 2012). "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." QHC of Lake City, Inc. v. McCutcheon, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004) (quoting Myrtle Beach Hosp., Inc. v. City of Myrtle Beach, 532 S.E.2d 868, 872 (S.C. 2000)). "The terms 'restitution' and 'unjust enrichment' are modern designations for the older doctrine of quasi-contracts." Skelly, 734 S.E.2d at 180 (quoting Ellis v. Smith Grading & Paving, Inc., 366 S.E.2d 12, 14 (S.C. Ct. App. 1988)). "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." Dema v. Tenet Physician Servs.-Hilton Head, Inc., 678 S.E.2d 430, 434 (S.C. 2009). "Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." Id. "The remedy for unjust enrichment is restitution." Inglese v. Beal, 742 S.E.2d 687, 691 (S.C. Ct. App. 2013). "To recover restitution in the context of unjust enrichment, the plaintiff must

show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value." Id. Thus, the tests for quantum meruit and unjust enrichment are indistinguishable.

As a preliminary matter, the court finds Celadon's argument that a claim for breach of contract and a claim for quantum meruit, or unjust enrichment, are mutually exclusive of one another is without merit. While a plaintiff certainly cannot recover under both theories, he may plead in the alternative. See Skelly, 734 S.E.2d at 181 (providing that, under South Carolina law, "[a] breach of contract claim and quantum meruit claim can be alternative rather than inconsistent remedies" (quoting JASDIP Props. SC, LLC v. Estate of Richardson, 720 S.E.2d 485, 488 (S.C. Ct. App. 2011))). Further, turning to the instant complaint, Gillins alleges the following:

> 18. Defendant was unjustly enriched and received a benefit from the Plaintiff in the following particulars, to wit:
>
>> a. In withholding the Plaintiff's leased truck and receiving a benefit in which the Defendant did not pay for (valuable services or material were furnished);
>>
>> b. In not allowing the Plaintiff to use the vehicle as an employee or independent contractor of the Defendant (the materials were accepted, used and enjoyed by the Defendant); and
>>
>> c. In failing to return the Plaintiff's vehicle as agreed upon pursuant to an agreement between the Plaintiff and the Defendant (the Defendant received a benefit from the Plaintiff and said vehicle was never paid for by the Defendant).
>
> 19. The Defendant has failed and continues to fail to return the Plaintiff's leased truck or refund monies he had already put

>    into the truck as agreed upon pursuant to the agreement between the Plaintiff and the Defendant.
>
> 20. The Plaintiff is informed and believes that the Defendant was unjustly enriched in maintaining the Plaintiff's truck which rightfully belongs to the Plaintiff's possession pursuant to the agreement between the Defendant and the Plaintiff.
>
> 21. As a result of the Defendant [sic] unjust enrichment, the Plaintiff is informed and believes he is entitled to an award of damages against the Defendant in an amount to be determined by the trier of fact.

Compl. ¶¶ 18–22.

Therefore, the court finds Gillins adequately pleaded each element of quantum meruit, or unjust enrichment, with sufficient factual matter to state a plausible claim for relief. Iqbal, 556 U.S. at 679 (asserting that, on a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief").

### E.    Conversion

Celadon argues Gillins failed to state a claim upon which relief may be granted for conversion because his complaint "states no more than legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Def.'s Mot. 10.

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belong to another, to the alteration of the condition or the exclusion of the owner's rights." Hennes v. Shaw, 725 S.E.2d 501, 508 (S.C. Ct. App. 2012) (quoting Schmauch, 582 S.E.2d at 442). "Conversion is a wrongful act that emanates by either a wrongful taking or wrongful detention." Moore v. Weingberg, 644 S.E.2d 740, 749 (S.C. Ct. App. 2007). "Conversion may arise by some

illegal use or misuse, or by illegal detention of another's personal property." Schmauch, 582 S.E.2d at 442. "To establish the tort of conversion, the plaintiff must establish either title to or right to the possession of the personal property." Hennes, 725 S.E.2d at 508.

Upon review of the complaint, as well as the Agreement attached thereto, the court finds Gillins has failed to sufficiently plead a plausible claim for conversion because he did not own the truck and cannot prove he had a right to possession of the truck. The Agreement clearly stated that the lessor—or its leasing company—retained full legal title to the truck, and the lessee "shall acquire no right, title, or interest in the Equipment, except as expressly set forth in this Agreement." Notice of Removal, Ex. 1 ¶ 21. Although the Agreement, a rent-to-own lease, provided for a purchase option upon completion of all the terms and conditions, see id. ¶ 5, Gillins' complaint indicates the lease was not successfully completed. Further, Gillins has alleged no facts, and pointed to no provisions in the Agreement, indicating his right to possession of the truck was superior to that of Celdadon's. To the contrary, Gillins makes conclusory allegations in his complaint, merely arguing that Celadon wrongfully took the "leased truck" from his possession.

Therefore, because Gillins cannot prove he had title or right to possession of the leased truck pursuant to the Agreement, the court finds he has failed to state a plausible claim for relief for conversion. Iqbal, 556 U.S. at 679 (providing that, on a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief"); Hennes, 725 S.E.2d at 508 ("To establish the tort of conversion, the plaintiff must establish either title to or right to the possession of the personal property.").

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Celadon's motion to dismiss as it pertains to Gillins' fraud in the inducement, unfair trade practices, and conversion claims. Nevertheless, the court **DENIES** Celadon's motion to dismiss Gillins' breach of contract claim as well as his claim for quantum meruit and unjust enrichment.

**AND IT IS SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　　　　　/s/ David C. Norton
　　　　　　　　　　　　　　　　　　　　　　　　**DAVID C. NORTON**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**August 24, 2016**
**Charleston, South Carolina**